UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Teresa Marie Schnell, Trustee for the Next of Kin of Dillon Dean Bakke, Decedent,<br><br>Plaintiff,<br><br>v.<br><br>Ramsey County,<br>Xue Yang, in Individual and Official Capacities,<br>Alex Grundhofer, in Individual and Official Capacities,<br>Scott Brommerich, in Individual and Official Capacities,<br>Antonio Rulli, in Individual and Official Capacities,<br><br>Defendants. | File No. _____<br><br><br><br>**COMPLAINT AND JURY DEMAND** |

_____

For her Complaint against Defendants, Plaintiff Teresa Marie Schnell, Trustee for the Next of Kin of Dillon Dean Bakke, states and alleges as follows:

**Introduction**

1. This action arises out of Defendants' deliberate indifference to the known serious medical condition of Dillon Dean Bakke ("Dillon" herein) while he was a pretrial detainee at the Ramsey County Jail from August 7th to August 9th, 2022, in violation of his Fourteenth Amendment rights.

2. During his detainment, Dillon suffered a serious and progressively worsening brain hemorrhage. On August 7th, Dillon began displaying neurological signs and symptoms, and began vocally and continually complaining about severe pain. His condition deteriorated over the course of the night of August 7th and into the early morning hours of August 8th, at which point he was unable to stand or walk, and was yelling out in pain and yelling for his mother. In response, the individual Defendants went to Dillon's

jail cell, handcuffed him, lifted him up because he could not stand or walk, and carried him to a cell in the segregation unit, where they laid him down and left. The individual Defendants knew Dillon could not stand or walk and was in severe pain. Despite this, they did not report Dillon's condition to any medical personnel or otherwise request appropriate medical treatment. Had they done so, Dillon could have been provided prompt and effective emergency medical treatment.

3. This failure to report and failure to obtain treatment were the result of the individual Defendants' deliberate indifference to Dillon's known and serious medical condition. Such failures were also the result of the custom, pattern, and practice of Defendant Ramsey County regarding the withholding and delaying of emergency and otherwise necessary medical treatment for detainees at the Ramsey County Jail. Defendants' failures to provide medical treatment to Dillon violated his right to adequate medical treatment under the Fourteenth Amendment.

4. As a result of Defendants' failures, Dillon's condition continued to deteriorate unabated over the course of the next 30 hours, and he was found unresponsive in his cell on the morning of August 9th. He was taken to Regions Hospital where imaging revealed extensive intraparenchymal cerebral hemorrhaging and related brain injuries. Despite extensive life-saving efforts at Regions Hospital, Dillon passed away as a result of his injuries on August 27, 2022.

5. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, and seeks to recover all monetary damages and relief cognizable under Minn. Stat. § 573.02 and other law.

## Parties

6. Plaintiff Teresa Marie Schnell, Trustee for the Next of Kin of Dillon Dean Bakke, Decedent, is the court-appointed trustee for Dillon's next of kin pursuant to Minn. Stat. § 573.02. *See* December 28, 2022 Appointment Order, Ramsey County Court File No. 62-CV-22-6511. Plaintiff is a Minnesota resident and is Dillon's mother.

7. Defendant Ramsey County is a municipality located in Minnesota. At all times relevant herein, Defendant Ramsey County acted through its employees and agents acting within the course and scope of their employment and under color of law.

8. Defendants Xue Yang, Alex Grundhofer, Scott Brommerich, and Antonio Rulli were correctional officers employed by Ramsey County at all times relevant herein, and are sued in their individual and official capacities. At all times relevant herein, these individual Defendants were acting under color of law and within the course and scope of their employment with Defendant Ramsey County.

## Jurisdiction and Venue

9. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

10. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391.

## Facts

11. On the morning of August 7, 2022, Saint Paul Police Officers came into contact with Dillon as he slept on the back porch of his mother's house in Saint Paul. Upon information and belief, a neighbor had called the police to report Dillon as a suspicious person. Officers arrested Dillon for fifth-degree drug possession and brought

him to the Ramsey County Jail. Dillon was compliant and cooperative at all times during his arrest and transport to the jail.

12. Ramsey County correctional officers booked Dillon without incident, except they failed to note Dillon's hemophilia, a diagnosed condition known to Defendant Ramsey County at the time of booking, and they failed to note his prescribed factor VIII medication and the instructions for administration of this medication, both of which were also known to Defendant Ramsey County at the time of booking.

13. As evidenced by intake sallyport and open booking area surveillance recordings, Dillon was compliant, cooperative, and friendly with officers during the booking process.

14. Around the time of booking, it was noted by both correctional officers and medical staff that Dillon had a visible injury to his forehead. All Defendants were aware of this injury at all times relevant herein.

15. At all times relevant herein, Defendant Ramsey County had actual notice, documented in Dillon's inmate files, from Dillon's medical providers that he suffered from hemophilia, and possessed instructions regarding his prescribed factor VIII medication and the administration of this medication.

16. At no time relevant herein did any employee or agent of Defendant Ramsey County consider Dillon's potential need for his prescribed hemophilia medication, despite the seriousness of that condition and the fact Dillon presented with a visible head injury.

17. As evidenced by entries in Dillon's inmate diary report authored by Defendant Xue Yang, Dillon exhibited "odd behaviors, moaning loudly in the middle of the

night saying that he's in pain" during the course of Defendant Yang's overnight shift beginning on August 7th.

18. A nurse checked Dillon's vitals at around 1:27 a.m. on August 8th.

19. For multiple hours thereafter, Dillon continued to yell in pain and yell for his mother. At around 4:45 a.m., Defendant Xue Yang made the decision to move Dillon from his jail cell to a new cell in the segregation unit, on the purported grounds Dillon was causing a disturbance in his cell pod.

20. At around 4:45 a.m., Defendants Xue Yang, Alex Grundhofer, Scott Brommerich, and Antonio Rulli went to Dillon's cell, where Dillon was lying on the floor of his cell in obvious pain. Dillon reported to these Defendants that he could not stand or walk. These Defendants placed Dillon in handcuffs, and physically carried him from the cell to a segregation cell, where they laid him on a mattress and left. As a result of this encounter along with Dillon's previous behavior during the many preceding hours, these Defendants each knew that Dillon could not stand or walk and was in severe pain.

21. Defendants Xue Yang and Alex Grundhofer drafted incident reports regarding Dillon's move to segregation. Therein, they claim Dillon willfully refused to stand or walk on his own and was passively resisting. These self-serving statements are false, and are contradicted by relevant body worn camera and jail surveillance recordings that show Dillon was obviously unable to walk or stand on his own, was in severe pain, and was fully cooperative with the individual Defendants.

22. Defendants Xue Yang, Alex Grundhofer, Scott Brommerich, and Antonio Rulli did not report Dillon's inability to stand or walk, or the severe pain Dillon exhibited

during his move, to anyone. Likewise, these Defendants did not take any steps to request medical treatment for Dillon.

23.     Around 10:00 p.m. on August 8th, a nurse and correctional officer observed Dillon through the food pass window in Dillon's segregation cell. Dillon was lying on the floor, awake and alert, but did not communicate with the nurse. Upon information and belief, nobody had informed this nurse that Dillon had been in severe pain and unable to stand or walk since at least the early morning hours of August 8th.

24.     Dillon had been set to be released from the jail on August 9th. Around 10:15 a.m. on August 9th, a correctional officer went into Dillon's segregation cell to begin the release process. The officer found Dillon lying on the floor in a pool of urine, unconscious and unresponsive. The officer requested an emergency medical response on his radio. Jail nurses responded, assessed Dillon's condition, and called for EMS transport to Regions Hospital. Saint Paul EMS personnel arrived on the scene shortly thereafter and transported Dillon to Regions Hospital.

25.     While medical personnel were attempting to render life-saving treatment to Dillon in his segregation cell, multiple correctional officers stood nearby discussing the incident. Officers commented that Dillon had been yelling for his mother "all day yesterday," that "yesterday and today he moved around some," that "the guys up here said they had to drag him up here" regarding Dillon's move to segregation, and asked "Did you hear him this morning?"

26.     Brain imaging at Regions Hospital revealed extensive intraparenchymal cerebral hemorrhaging and related brain injuries, and Dillon was rushed to emergency

surgery. He was stabilized but never regained consciousness. He passed away at Regions Hospital on August 27, 2022, as a result of his brain injuries.

27. As a result of his injuries, Dillon experienced general damages in an amount to be proven at trial, including severe pain and suffering, psychological distress, and disability. Dillon incurred medical expenses for treatment of his injuries in an amount to be proven at trial and reasonably believed to equal or exceed $1,165,000.00. Dillon also sustained a loss of earning capacity in an amount to be proven at trial and reasonably believed to exceed $2,000,000.00.

28. As a result of Dillon's death, his surviving next of kin have incurred pecuniary damages including but not limited to those set forth above, as well as loss of companionship, comfort, advice, aid, and support in amounts to be proven at trial.

29. Dillon's injuries, death, and the damages alleged herein were the direct result of Defendants' violations of Dillon's right to adequate medical treatment under the Fourteenth Amendment. Plaintiff therefore brings the following claims for relief.

**COUNT I
- Defendants Yang, Grundhofer, Brommerich, and Rulli -
Deliberate Indifference to Plaintiff's Serious Medical Condition in Violation of
Plaintiff's Fourteenth Amendment Rights**

30. Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

31. At, prior to, and following Dillon's move to segregation around 4:45 a.m. on August 8, 2022, he suffered from an objectively serious medical condition and required prompt emergency medical attention.

32. As of 4:45 a.m. on August 8th, Defendants Xue Yang, Alex Grundhofer, Scott Brommerich, and Antonio Rulli knew Dillon suffered an objectively serious medical condition that required prompt emergency medical treatment.

33. Despite such knowledge, the individual Defendants knowingly and deliberately, and under color of law, failed to take steps to secure prompt medical treatment for Dillon.

34. Because of such failures, Dillon did not receive medical treatment until it was too late, when he was found unconscious and unresponsive nearly 30 hours later.

35. Such delay in treatment caused Dillon's serious medical condition to become worse than it would have been had prompt emergency medical treatment been rendered, and caused Dillon to sustain new injuries. Such delay in treatment also caused Dillon to endure nearly 30 hours of unnecessary pain and suffering and psychological distress, and caused his death.

36. The individual Defendants' denial of medical treatment to Dillon was deliberate, reckless, and malicious, and violated Dillon's Fourteenth Amendment rights.

37. Plaintiff is entitled to a money judgment against the individual Defendants pursuant to 42 U.S.C. § 1983 for all compensatory damages cognizable under Minn. Stat. § 573.02 and other law, for punitive damages pursuant to federal law, and for other relief, in amounts to be proven at trial.

## COUNT II
## - Defendant Ramsey County (*Monell* Liability) -
## Deliberate Indifference to Plaintiff's Serious Medical Condition in Violation of Plaintiff's Fourteenth Amendment Rights

38. Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

39. Upon information and belief, on and before August 7-9, 2022, Defendant Ramsey County, with deliberate indifference to the rights of citizens, maintained and permitted a custom, pattern, and practice – by and through its agents and employees acting under color of law – of withholding and delaying necessary medical treatment to

detainees with serious known medical conditions, including detainees expected to soon leave the custody of Ramsey County, in violation of the Fourteenth Amendment rights of such detainees.

40. As a direct and proximate result of such custom, pattern, and practice, Dillon and Plaintiff sustained injuries and damages as alleged herein.

41. Plaintiff is therefore entitled to a money judgment against Defendant Ramsey County pursuant to 42 U.S.C. § 1983 and *Monell v. Dept. of Social Services* for the damages and other relief alleged herein.

### Jury Demand

42. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all counts set forth in this Complaint and on any other counts which may hereafter be alleged.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

1. Findings that Defendants violated Dillon Dean Bakke's Fourteenth Amendment rights and are jointly and severally liable to Plaintiff for damages and other relief as alleged herein, pursuant to 42 U.S.C. § 1983;

2. An award and judgment for compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial;

3. An award and judgment for punitive damages pursuant to federal law against Defendants, jointly and severally, in an amount to be determined at trial, or alternatively, leave to amend the Complaint to allege punitive damages;

4. Leave to amend the Complaint to add such additional defendants, allegations, and counts as the parties' disclosures and discovery may warrant;

5. An award to Plaintiff for attorney's fees pursuant to 42 U.S.C. § 1988;

6. An award to Plaintiff for the costs and expenses incurred in bringing this action, and for pre-judgment and post-judgment interest; and

7. Any further and additional relief the Court deems just and equitable.

Respectfully Submitted,

MESHBESHER & ASSOCIATES, P.A.

Dated: 8/29/2023

s/ Richard E. Student
Steven J. Meshbesher (#127413)
Richard E. Student (#390266)
9800 Shelard Parkway, #310
Minneapolis, MN 55441
Phone: (612) 332-2000
*Attorneys for Plaintiff*